| | AGENCY<br>☐ FEPA | CHARGE NUMBER |
|---|---|---|
| M.H.R.C. **CHARGE OF DISCRIMINATION**<br>This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | ☐ EEOC | E05-0496 |

## MAINE HUMAN RIGHTS COMMISSION

| NAME (Indicate Mr., Ms., Mrs)<br>**Mr. Paul McDermott** | HOME TELEPHONE (Include Area Code)<br>**(207) 838-4914** | |
|---|---|---|
| STREET ADDRESS<br>**69 Hardy Road** | CITY, STATE AND ZIP CODE<br>**Falmouth, ME 04105** | DATE OF BIRTH |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one, list below).

| NAME<br>**Genentech Inc.** | NUMBER OF EMPLOYEES, MEMBERS<br>**7,000 +/-** | TELEPHONE (Include Area Code)<br>**(650) 225-1000** | |
|---|---|---|---|
| STREET ADDRESS<br>**1 DNA Way, San Francisco, CA 94080** | CITY, STATE AND ZIP CODE | | COUNTY |
| NAME | | TELEPHONE NUMBER | |
| STREET ADDRESS | CITY, STATE AND ZIP CODE | | COUNTY |

| CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))<br>☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN<br>☐ RETALIATION  ☐ AGE  ☐ DISABILITY  X WHISTLEBLOWER  ☐ OTHER (Specify) | DATE DISCRIMINATION TOOK PLACE<br>EARLIEST(ADEA/EPA)   LATEST(ALL)<br>**4/29/2005** |
|---|---|

THE PARTICULARS ARE (If additional space is needed, attach extra sheet(s)):

1. I was hired by Genentech as a sales person with the job title "Professional Education Liaison Rituxan RA" commencing in April, 2004. "RA" is an abbreviation for rheumatoid arthritis. My business card included the full title.

2. At all times relevant herein, my office was based in Falmouth, Maine.

3. My job responsibilities as a Professional Education Liaison Rituxan RA included meeting with rheumatologists to attempt to persuade them to prescribe Rituxan for off-label use to treat rheumatoid arthritis.

4. The United States Food & Drug Administration ("USFDA") has approved Rituxan solely for the treatment of non-Hodgkin's Lymphoma, a cancer of the immune system.

5. The USFDA has not approved the use of Rituxan for any purpose other than for the treatment of non-Hodgkin's Lymphoma.

6. Pursuant to 21 U.S.C. §331(d), it is illegal for a drug manufacturer to promote or market use of a prescription drug, including Rituxan for off-label purposes, including for the treatment of rheumatoid arthritis.

7. Approximately six months after I was hired, my job title was changed to delete the reference to "Rituxan RA." My business card was changed to reflect this deletion. However, no substantive change was made in my job responsibilities. This change in title was done, upon information and belief, at the behest of Genentech's legal department.
*(continued on Page 2)*

| I also want the charge filed with the EEOC.<br>I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements)<br><br>I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
|---|---|
| I declare under penalty of perjury that the foregoing is true and correct.<br><br>Paul P. McDermott<br>Date **10-28-05**   Charging Party (Signature) | SIGNATURE OF COMPLAINANT<br>Paul P. McDermott<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Day, month, and year)  **28 - Oct. - 2005** |

EXHIBIT 1

8. In or about August 18, 2004, I attended a dinner at Morton's Restaurant in Boston, Massachusetts, the purpose of which was to promote the off-label use of Rituxan for treatment of rheumatoid arthritis under the guise of an educational event produced by an independent continuing medical education organization. In fact, upon information and belief, all of the material for the meeting was prepared by Genentech, and Biogen Idec Inc., which co-developed Rituxan, and their sales and marketing staffs.

9. In November 2004, I attended a meeting at Genentech's world headquarters in San Francisco, California, at which members of Genentech's legal department cautioned against putting anything in writing with regard to promotional work promoting Rituxan for off-label use.

10. On February 1, 2005, at a meeting of the Genentech national sales force in Orlando, Florida, I complained to Genentech Associate Director Robert Rice that Genentech sales representatives, including myself, were being required illegally to promote Rituxan for off-label treatment of rheumatoid arthritis during visits to offices of rheumatologists.

11. Although Robert Rice had a responsibility to advise Genentech management of the illegal sales or marketing activity about which I complained, Mr. Rice did not indicate that he would take any steps to do so.

12. The following day, on February 2, 2005, at a social event as part of the national meeting, I complained to Genentech Vice-President Martin Babler that Genentech sales representatives, including myself, were being required illegally to promote the use of Rituxan for off-label treatment of rheumatoid arthritis during visits to offices of rheumatologists. Mr. Babler responded that he would be "taking care" of the situation and warned me not to send any communication to him about the illegal promotional activities for Rituxan by facsimile, email, or voicemail.

13. On February 24, 2005, I met with Mr. Rice in Chicago, Illinois and again expressed concern about the illegal off-label promotional activities which I had spoken with him about three weeks earlier. Mr. Rice advised me that I should find a different position within Genentech within 60 days.

14. On March 4, 2005, eight days after I had repeated my concerns to Mr. Rice, during the course of a phone conversation with Genentech Senior Director Fred Logan and Genentech Senior Manager of Human Resources David Hooper, Genentech offered me a separation agreement including payment of $20,900. I declined and replied that I was looking for a position with Genentech's Managed Care Group.

15. On April 29, 2005, I received by email a letter from Mr. Rice falsely claiming that I had resigned effective immediately. Three hours later my health insurance was discontinued.

16. Upon receipt of the email from Mr. Rice, I responded by email that his assertion that I had resigned was false. I never received any response from Mr. Rice anyone else from Genentech.

17. I believe that I performed my job at all times in a satisfactory fashion.

18. Genentech terminated my employment on April 29, 2005 in retaliation for my complaints about the illegal sales and promotion of Rituxan for off-label use to treat rheumatoid arthritis in violation, *inter alia,* of Maine's Whistleblower Protection Act.